I will be dividing the time equally with counsel for Mr. Rodriguez. I represent Defendant Sabatini, so I intend to sit down after nine minutes and reserve a minute for rebuttal. In Netta v. The United States, the Supreme Court held that, quote, The well-settled meaning of fraud requires a misrepresentation or concealment of material fact. Yet today, the government seeks a ruling from this Court sustaining the trial court's ruling, the district court's ruling, that fraud does not involve a material misrepresentation or an omission of material fact or, indeed, any other form of dissent. Government agrees that the Court's instructions on honest services fraud did not contain any element of or reference to deceit or misrepresentation or omission of material fact or omission. How can you advance such an argument in the face of Netta? The government seems to say that 1346, Netta was a 1341 mail fraud case, and because this is 1346, an honest services fraud, that somehow there is a looser definition of fraud, in fact, a definition of fraud that doesn't even involve fraud. It doesn't – if it doesn't involve deceit, it doesn't involve fraud, that can be applied in honest services cases. But if you look at 1346, it's obvious from the legislative history as well that its only purpose was to include within 1341 and 1343's definition of wire and mail fraud a non-monetary kind of fraud, that is, a scheme to deprive of honest services, which is intangible rights. Yeah, but I understand the argument, it's a pretty simple one, that is to say fraud necessarily requires some form of deceit. And this is mail fraud, and therefore we need an instruction, and the Ninth Circuit pattern instruction is wrong. Well, it is. And the district judge didn't fix it. Absolutely. That instruction is probably commonly given in conjunction with 1341 instructions, and maybe in a lot of cases it can be given in such a way that it is adequate. Counsel, help me a little bit with harmless error. I'm pretty sympathetic to your argument that fraud requires misrepresentation or concealment of a material fact. Right. However, I think it's subject to harmless error review, even if an instruction omits an element of the crime, namely that one. Yes. Isn't that right, Underneather? It is absolutely right. In this case, it seems perfectly plain that both of these people, Rodriguez and Sabatini, misrepresented payments that were just stealing as consulting fees. So why does it matter? It seems like it's undisputed. They just represented as consulting fees money that wasn't consulting fees. Well, Your Honor, it would be extraordinary for the government to prevail on a harmless error argument in this case because the trial judge himself, at the end of the government's case, threw out the allegations that the defendants had obtained money and property by false representations or omissions by saying that it did not find those. Essentially what the indictment alleged was not so much false representations but failures to disclose, and the trial court found an absence of any duty to disclose. But that's not quite right. The district judge threw out, with respect to the money and property theory under the mail fraud count, only part. The district judge did not throw out that part of the money and property claim with respect to the money that went to the stepfather or the girlfriend because, as he read the governing statute, the money had to come, quote, to him, and that was the only money that came to him. So the district judge did not throw it out entirely. But that portion was surplusage, in essence, Your Honor. That was not alleged to be part of the scheme. The scheme began in 19 — the charge scheme began in 1995. Those events preceded it by three years. So the government included that allegation in there as color. Yeah. But you've also got a problem in that, as I read the record, the district judge did not understand deceit. That is to say, that's why he gave the wrong instruction. So that he made — so he might have made two mistakes. Well, that's correct, Your Honor. But what we're saying is that a jury without guidance — we certainly can't say that the jury did find deceit because they weren't called upon to find it by the instructions. The government has to prove beyond a reasonable doubt that the absence of this instruction made no difference at all. It seems like there was evidence and there was no contradiction in the evidence that monies that were paid to or at the direction of Rodriguez and Sabatini were denoted as consulting fees and were not consulting fees. Isn't that right? Well, there certainly was evidence to that effect, Your Honor. There's no evidence that would throw any doubt on it. But, Your Honor, when the court acquitted, it struck the representations segment from the indictment entirely. And this case went to the jury. All that was left when you amended the indictment was the failure of a duty to disclose, the failure to meet a duty to disclose. In other words, the misrepresentations were pulled out, and the only theory — there   The only evidence to that effect, which the case could go to the jury consistent with the original indictment, was on a failure to disclose. And I submit, Your Honor, that the trial court's ruling that there wasn't a duty to disclose certainly made this a triable case.  I'm not sure that's in there. I read that instruction. It didn't even say — I mean, failure to disclose is a kind of deceit. I'm not sure even that was in there. Oh, you're absolutely right, Your Honor. The issue of a failure to disclose was not posed to the jury by the instructions. What I'm saying is once the court amended the indictment — and, of course, once the indictment is amended, there's a judgment of acquittal on it — we can't possibly affirm on a theory of misrepresentation. Let me ask you this. We've got two kind of harmless error things to get past. One of them is plain error because the instruction was not objected to on this ground. And the other one is, assuming we get to the question of harmless error, I mean, what's the harm in giving the bad instruction? What standard are we supposed to apply here to determine whether or not there's plain error and whether there's harmless error? Oh, well, we have apples and oranges here, Your Honor. That's why I'm asking this question, because I've got trouble with this. There was an explicit and consistent request for an instruction that it required a material omission or material misrepresentation. There's no plain error there. That's fully preserved. The government's only plain error argument is that it says, well, okay, that's preserved. But the Court's failure to even say there has to be an intent to deceive was not the subject of an explicit request. Did you — when you sit down, if you could, while you're there, locate for me in the about the plain error part of it anymore. Oh, I will do that in rebuttal, Your Honor. Okay. But it was a matter of a requested instruction being requested again and again and refused by the Court, and then, of course, an objection to the failure to include it. But the thing — as to the second part, the failure to even include the mental state of an intent to deceive, I mean, once the Court rules, hey, counsel, you're wrong. There is no material omission or deceit required in an honest services case. Isn't it futile to then say you not only need an omission or a misrepresentation? Assume for the moment that this is not plain error, that it was properly preserved by objection, assuming. What's then the standard of plain error here when the instruction is bad and does not require a particular element? Well, harmless beyond a reasonable doubt is to the Chapman error of the refusal to give the correct instruction. But I don't want to abandon this. The judge, whatever, maybe it's out of his misconceptions, acquits of the theory of misrepresentations. Once he acquits and strikes it from the indictment, government — No, I'm not sure he acquits on the theory of misrepresentation. He acquits on their two theories. One of them is money or property and the other one's loyal services. He acquits on money or property. He doesn't say acquit on misrepresentation. Well, Your Honor, it is only the — once he struck it from the indictment, the words money or property by misrepresentations, pretenses and so forth are struck from the indictment completely. Out of the case, there's been an acquittal on that theory. The only language which is consistent with fraud left in the indictment is omissions. Does he actually redraft the indictment? You'll find it in the excerpt of record, Your Honor, and I'll cite the pages. You will see the indictment with blanks in it because all of the language has — That's the redacted amendment. Is redacted out. And what I'm saying, Your Honor, is that if the government's theory is, well, there — and in response to Judge Kleinfeld's question, well, there was enough evidence in there to support misrepresentation, that cannot be subject to Chapman error, because then you're talking about a variance. Then you're talking about — or you're talking about conviction on a theory of which the defendant has been acquitted. The theory that is left in the case is a failure to disclose, and on that question, the Court had said it didn't find a duty disclose. So what we're talking about here is a case that was eminently triable on whether there was a violation of a duty to disclose, when that's the only theory left in the case after the Court acquits and strikes material from the indictment. And under Sterone and Shipsy in this Court's decisions, if the conviction could rest on a theory that's no longer in the indictment, then you're dealing with a — because in this case, because there's been an acquittal, then you're certainly dealing with a constructive amendment, and that's per se reversible. You're saying if all that's left is duty to disclose. Right. And fraud under Nieder requires a misrepresentation or a concealment, and there is no proof of either a misrepresentation or some sort of active concealment of anything. It's just a breach of fiduciary duty, which is a civil wrong, and it is not fraud. No, no, no. Your Honor, because you said, asked me, there's no proof. You could have substantial proof of a crime in the record, and if you have a Federal constitutional error, the fact that there's sufficient evidence to sustain a conviction doesn't in any way carry the government's burden of proving that the error was harmless. No, it might under Nieder. Nieder says — it has this language, maybe a little surprising. It says, We believe that where an omitted element is supported by uncontroverted evidence, this approach reaches an appropriate balance between society's interest in punishing the guilty and the method by which the decisions of guilt are made. Right. But what I'm saying in this case, Your Honor, is that the — you would have to hold that the evidence of a failure — that the defendant deprived the Union of Honest Services by failing to disclose certain things is so overwhelming that it can be held to — No, no. You and I are looking down different paths here. What I'm saying is, if I understand your argument right, even if it was overwhelming and uncontradicted that he didn't disclose, so long as he didn't misrepresent or conceal, he's not guilty of the crime, because the crime requires misrepresentation or concealment. Mere sleaziness is not enough. Mere breach of fiduciary duty is not enough. Well, that's true. That's true. Although — But I'm still wondering why there isn't concealment, because they label kickbacks as consulting fees. Well, Your Honor, I am not here to argue that there is — You know, as you can — if I'm on the board of directors and I look at the financials when the executive director brings them in, one thing you always have to worry about if you're on the board of directors is, is the executive director stealing? Right. But as long as they see consulting fees and, gee, something really complicated, possibly — probably beyond the executive director's abilities, I expect consulting fees. Well, Your Honor, there is substantial testimony in the record, however, that there was no — by other members of the board, that there was no duty to disclose the nature of the hiring here. And, therefore, it certainly was a triable case on whether there had been a breach of a duty to disclose. The basic argument being, I guess, that everybody and his dog knows that unions are corrupt in this way. And, you know, a consulting fee means, well, it could be a real consulting fee or it could be a payment to the daughter. Well — So no concealment, because everybody knew. The — well, it is certainly — I mean, one thing that's critical is that if somebody stood up, a union president stood up and said, I'm going to hire my daughter and I don't even care if she's the most qualified person in the world, he might be breaching fiduciary duties. He might be committing other legal wrongs. But he certainly is not committing fraud. No, no. No, it's a little different. It's more like, what if somebody says, what's this $50,000 going to your daughter? Well, that's a consulting fee. She's in the business of consulting on ERISA matters. Well, okay. We don't have any objection. We're all bringing our sons and daughters into the union. I mean, take care of your own. But if it's not really a consulting fee and she's not doing any consulting, that's deceit. And it looks to me like she's not doing any consulting. It is deceit. And just because no member explicitly raised it in the hypothetical way I've described doesn't mean that they wouldn't look at the document and think, hmm, wonder what this mysteriously named corporation. Oh, it's consulting fees. Well, that's okay. Well, Your Honor, the evidence that these were not consulting fees was not uncontradicted. There was indeed evidence in dispute on that question. There were indeed activities that Ms. Sabatini was engaged in. And, of course, the jury never reached the question of whether there was deceit in that regard because it was never asked to. And this Court would, in effect, have to say that there is competing evidence in this situation. The jury never reached a critical element of the crime, but we will essentially usurp the jury's function and find that were we were jurors, we might find the case proven. Neither is the situation overwhelming evidence, uncontradicted evidence. That is not the situation in this case. And I'd like to keep arguing this point, except I realize that ---- Let me just ask you this question. How should this case ---- how should this matter have been charged? How should it have been charged? Yes. Well, the ---- well, there is a number of issues as to different counts, where, for instance, the prosecutor apparently was under the impression that you could have a count over here and somehow incorporate language from other parts of it without doing it specifically. That's a separate question. But the ---- you know, there was originally a scheme to defraud, and there were misrepresentations and omissions listed. That charging may have been adequate as to the HDS, but we had a situation where the Court comes along, it acquits on a theory of active misrepresentations, it strikes that theory from the record, it leaves in the record certain duties to disclose, so that would be the actus reus of the fraud crime, and then it gives instructions which doesn't require the jury to find those allegations to be true. The instructions given here ---- and let me say this. The instructions given here basically could permit this jury to convict on the basis of non-criminal conduct. Hiring a daughter may be a conflict of interest. Absent some specific criminal statute, it is not a crime, and it is certainly not fraud unless we get into the element of deceit. And the one thing that we know for sure is that the jury's verdicts in this case do not represent any finding of deceit on the part of the defendants. And lest I ---- I must cede to Mr. Weinberg, who has some independent claims that are equally important. Thank you. Mr. Weinberg. Good morning, Your Honors. Doran Weinberg. I represent Appellant and Defendant Gary Rodrigues. And with leave of the Court, I would like to comment on the issues that you've just been addressing, because I tried the case. And let me say that there were two defenses that were supported potentially by the evidence, had the jury believed it. Number one, three witnesses, Lilia Ulam, Mel Higa, and Garrett Ng, all testified that Robin Sabatini did work on the benefit plans and did consulting. Second, and Linda Smith, a UPW employee, said she saw Sabatini there often working and they discussed benefit plan issues. So there was evidence that consulting work was done. The second defense that was presented, you know, through cross-examination was that, in fact, the consultant fees did not come from the union or the union members, that the consultant fees came from the insurance carriers, that it was part of their overhead. There was contested evidence. And, in fact, although ---- Well, that matters. It's like the employer's share of Social Security comes from the employer, not the employee, but he still looks at the cost of hiring an employee, including that expense. I understand that, Your Honor, but there was extensive evidence in this case that it did not ---- that the consultant fee did not affect the premium. There were two witnesses for the government who said that it did, and each of them was heavily impeached. There were several witnesses who admitted on cross-examination that, in fact, the UPW members paid premiums that were equal to or lower than ---- Yes, but that question doesn't go to the deceit, it seems to me. That question goes to harm, and they were instructed on harm. I understand that. But it also goes to the question of duty to disclose and deceit in the sense that if the union was not losing money and union members were not losing money, then that affects and goes to the question of what were they entitled to know and was he right or wrong in not telling. It does go to the question of deceit as well as the question of potential loss. So I do think the evidence was seriously contested on both of these controls. Is there any evidence offered or any argument made along the lines that I suggested, not entirely facetiously, that everybody in his dog knows that some of these consulting fees are really just disguised payments to family members for doing very little work? No, but what was presented to the jury extensively was that everybody has consultants and uses them in different ways, and the percentage paid in this case was at or lower than other consultant fees, and those come from the insurance carriers. What wasn't said but what was implied is that it's the cost of doing business for the insurers. They hire who the union people want them to hire. But that wasn't presented as an affirmative defense because at the end of the government's case, it was the judgment of the defense that nothing had been proven, and so no defense was presented. If I may speak to the issues specific to Appellant Rodrigues, there are two sets of those issues. One involves the embezzlement charges, which are in counts 51 to 55, and the other is count 102, the ERISA count. Those charges share common features, and I believe that on analysis, they are artificial constructs in which no cognizable federal crime was charged and no cognizable federal crime was proven. At the heart of each of the allegations, there is a fiction. In the case of the embezzlement charges, the fiction is that premium payments ported through the UPW to the dental service were somehow property or assets of the union. In regard to count 102, the fiction was that the UPW's benefit plan, life insurance plan, was subject to ERISA. Each of those contentions or each of those statements is false. With respect to the embezzlement count, I'm sure the Court knows the record,  employers sent to the union money representing an employer's share and an employee's share of premiums. The union took that money and passed it on penny for penny to Hawaii Dental Service, okay? The government's theory of why this was somehow UPW money that was being embezzled was because of the happenstance that the union was putting the money in a general account and that every once in a while that general account went into the red. So, therefore, the government's theory was the money was property and assets of the UPW, notwithstanding that the uncontradicted testimony was every penny that came in for premiums went out for premiums to HDS. What about money in a bank, just ordinary embezzlement, bank teller embezzles? Mm-hmm. The money comes in, it belongs to the depositors. There's an obligation on the bank to pay it back to the depositors or pay it out by checks and so on. Why is – but the bank has significant control over all the monies in the bank. As I read the district judge's response to this, his response was the union had sufficient control over this money while it was in this commingled account, that this can be embezzlement. Now, he didn't say comparable to embezzlement from a bank, but I think that's what he had in mind. The fact in these circumstances, Your Honor, is that these were designated funds, and even the prosecution's theory was that if the funds had been placed in a separate account by the union and passed on, that would not have been a crime. It was the notion that they were put in the separate account. It matters. I'm sorry? That really matters. I would think that if you – if the teller – if money that depositors brought into a bank was put in a trust fund for the depositor, that would – really would raise an issue of whether the teller is embezzling the bank's money or the depositor's money. But because the money the depositor brings to the bank goes into the bank's unrestricted account and the bank lends it to people for home mortgages or car mortgages or whatever it wants, it's because it's in the general fund that the teller is embezzling from the bank. Well, let's talk about what the alleged embezzlement was. What was the theft here? Because that's what embezzlement requires a taking. What was the taking? The money was taken into the account and passed on to HDS. What the embezzlement counts allege is that passing the money to HDS as premiums was somehow embezzlement. What was the theory of that embezzlement? What did these counts actually charge? Nothing. What they said was the money was passed on to HDS, and that was somehow a theft from UPW. One problem with that is that it was not the property of UPW. But second, and perhaps more important, it was not a theft because it was passed on to HDS. Now, the theory that the government originally took before trial in defending the charge was that as soon as the money was sent to HDS, that was the completion of the embezzlement. How? We do not know because, in fact, the government abandoned that theory and at trial presented to the jury the theory that it was really the fact that HDS used the money for consultant fees, and those consultant fees were not earned. That was what the embezzlement was. But that's not what Count 51 charged. Count 51 incorporated various parts of the indictment and specifically did not incorporate any of the allegations that consultant work was paid for but not done. So what happened here was that the Court gave general instructions on embezzlement without ever mentioning HDS in its instructions. The jury then, as it did with every one of the other 101 or 108, 102 counts altogether, the jury was hopelessly confused, I would submit, but the Court can't make that finding. What the jury did was they convicted. Well, I'm reading from Counts 51 and 55 that are all kind of jumbled together, but it says, Did unlawfully and willfully abstract and convert to his own use and the use of others the monies, funds, securities, property, and other assets of UPW. Well, the theory is that the money is transmitted to the dental insurance company subject to the requirement that some of it be given over to the consultant. But that's not what's charged in that. That's not what's charged in that count. His own use and the use of others? Now, does it have to say by means of and specify the means? Because that's the means. I just don't. That was the evidence at trial. Does that have to be in the indictment? Your Honor, there was no evidence. There was no evidence at trial that the premium money went, that the money went to HDS with the intention that it be given back to Robin Sabatini to do consulting work, which she did not do. Because, in fact, each step of that is not proven by the evidence below or was at least contested. And a properly instructed jury would have been unable to convict on these embezzlement charges because the charge itself did not incorporate the theory that Sabatini was doing, was getting paid for the assault work that wasn't done. The indictment count specifically incorporated pieces of the indictment and didn't incorporate those allegations. Did you argue this to the jury? I argued to the jury that there was no embezzlement here. And I argued it on grounds that, number one, it wasn't the union's assets. Number two, every penny went through. Number three, the premiums were, in fact, lower. And number four, the premiums were a cost to the carrier. And number five, that Sabatini did, in fact, do consulting work. We argued every single one of those things. We cross-examined vigorously on every single one of those points. And we truly believed at the end of the government's presentation that the government had failed to prove the negative on any of those and that, in fact, a fair jury with as well as any of the other crimes alleged. And what objections did the – after the jury was instructed, did the judge ask counsel if counsel had any objection to the instructions as given? We had lengthy instructions conferences beforehand, and the Court told us – That's not my question. After. I do not believe a specific objection was made after. No objection was made. I don't believe an objection was made after the jury was instructed, Your Honor. Where does that leave you? Well, I think it leaves us with a number of things. One is that the indictment on its face does not state a claim. It does not – it fails to state the offense. And that's an issue that is preserved on appeal and, in fact, was presented to the trial court in the post-trial motions. It also leaves us with the issue of constructive amendment. The fact that the judge's instructions allowed the jury to convict on uncharged theories, and it's still not clear, given the evidence and the instructions, whether the jury convicted him of commingling, because there was evidence that he commingled funds, and then it was told – the jury was told that, you know, a labor official has the following obligations. They were not told that the charge had to do with HDS. So they were permitted to convict on either the theory that Sabatini got consulting fees that weren't earned and that was the plan, which was not charged, or that he commingled and that's contrary to what a labor official ought to do, which was not charged. In either case, that is – that is error that is plain error, but it is per se error to instruct. But what objections – you made no objections after the instructions were given? Your Honor, we litigated instructions for two days, and the Court settled the instructions against this. And let me just say that I provided the references to Mr. Weirton. We specifically not only object – presented the materiality issue to the Honest Services Court, but we objected to the instruction when the Court said it wouldn't give it. We raised all of these objections, Your Honor, in the colloquies and litigation about the instructions before the Court gave them. It would have been fruitless and – and futile to make objections after since we'd argued all these things before and the Court ruled. What does the rule say about objecting after the Court has given the instructions? I know there's been some amendments to it. I'm not aware, Your Honor, that if – if an objection has been validly presented to an instruction and the Court rules on the objection and says, I'm going to give the following instruction notwithstanding your objection, I'm not aware of any rule that requires a pro forma objection for the record after that. If there is such a rule, it's news to me and I will, you know, follow it in the future. But I think in this – I don't believe there is such a rule, and it certainly would seem to me to be a futile exercise if, in fact, we – we – we asked for instructions that were not given and objected to instructions and the judge overruled our objections and determined, you know, to – to give the instructions notwithstanding our objection. I would like to spend a moment. I have no idea how much time I have left. You're way over your time limit, so let's hear from the government. I did want to address the ERISA issue. I guess I could do that in rebuttal if the Court would allow me to. Everything – you don't waive things that aren't in the papers. I'm sorry? If it's in the papers, you've preserved it. I understand that. Thank you. The morning may please the Court. Steve Lane from the Appellate Section of the Criminal Division for the United States. Our – there are two parts to our argument on the fraud instructions. First, that there – there wasn't any error. And second, that even if there was an omission of an element from the instructions, that the error was harmless beyond reason. Help me on something here. Yes, sir. I had another case that was kind of an unforgettable oral argument about – about five years ago, right after Nieder came down. The appellant's lawyer – again, the Ninth Circuit form instruction was used. Again, the defense lawyer was saying there has to be a deceit or a misrepresentation – or rather, he said there has to be a misrepresentation or a concealment of a material fact. The government said, no, that's not right. The defense lawyer stood up in oral argument and he said, Nieder, Nieder, Nieder. And then he said, I'm all done, unless the Court has questions. And I thought, gee, he was all done, because Nieder says the well-settled meaning of fraud required misrepresentation or concealment of material fact. Your Honor, we do not dispute that deception or falsehood in some form is an element of fraud. And our – And where is that, then, in the instruction? Our argument that is under the – under the non-technical standard for proving fraud, that the instruction that requiring the jury to find that the defendant's knowingly devised a scheme or artifice to deprive the union of Defendant Rodrigue's honest services encompassed – Scheme or artifice, in your view, then, includes deceit or deception or failure to disclose material fact? That's our argument in the statute. And one's supposed to infer from those words that that's the definition? Yes. The common meaning of – On my view, I'm not speaking for my colleagues. You lose on that point. Yeah, me too. I mean, Nieder specifically says what scheme or artifice is for is to eliminate the elements of damages and one other element. Maybe it was reliance. They say scheme or artifice means Congress doesn't require reliance in damages the way common law fraud does. Well, I mean, I'll move on to my harmless error argument. We believe that under the non-technical standard, I mean, looking at the objection the defendants made and the instruction they requested in the district court, they requested an instruction that the jury be required to find a specific misrepresentation or omission of fact. And I think it's clear under this Court's law, both before and after Nieder, that misrepresentation or omission of fact. And our argument is that that scheme or artifice language construed in light of the argument. Let me understand where you're going with that argument. Are you saying that the form of the objection, then, is insufficient to preserve the objection and it's plain error, or are you just saying you disagree with the instruction they wanted? We – there are two parts to their argument. One of their arguments we have deemed preserved. And we believe that their request for a misrepresentation instruction effectively preserved the question or the issue of falsehood and whether falsehood in some form has to go into the instruction. And by falsehood, you mean deceit? Deception, falsehood. So they preserved the question of whether deceit was required to be part of the instruction. But not intent to deceive, Your Honor, which is separate. The mental state – I mean, the two terms over – the two concepts overlap. But the falsehood really is part of the actus reus, whereas intent to deceive or cheat, intent to defraud goes to the mental state, obviously. And they did not request a mental state, an instruction for intent to deceive or cheat. And so we believe that that part of their argument is not sufficiently preserved. But – I see. In other words, you're saying that they kind of made the argument, but they didn't say the magic words. They did not. They only – they made one instruction, Your Honor. They requested one instruction. They made one objection with respect to the mental state required to prove fraud. And that was – I guess we're about to hear from them what specifically it was. Right. They asked for an instruction, which they got, on reasonable foreseeable harm. And they did not ask for a specific instruction on intent to deceive. But either way, the elements of deception or intent to deceive, whether they're harmless, whether the Court applies the harmless beyond a reasonable doubt standard or the plain error standard. Okay. Now, harmless beyond a reasonable doubt, just review what Chapman tells me. I have – in order to sustain the conviction, I have to find what under Chapman? No reasonable jury could have convicted on this evidence. That's right. And Nader – Nader fleshes this out. Nader itself adopts that harmless error standard. In fact, the Court in that case, where you had a similar omission from the instructions, remanded the case to the Eleventh Circuit, which – I said no reasonable jury could have acquitted on this evidence. Nader makes clear that where there is overwhelming evidence of the omitted fact, which we have in this case, that the error – it can be clear beyond a reasonable doubt that the – Clear beyond a reasonable doubt what? That no reasonable jury could have acquitted on this evidence, could have convicted on this evidence. Just help me out as to how things sort out. Clear beyond a reasonable doubt that a properly instructed jury would have found the omitted element. That's the standard, Your Honor. And we believe that that standard is satisfied here. We have, as you say – In other words, no reasonable jury would have acquitted. Because the entire scheme, and it was the centerpiece of the government's case, the entire scheme was set up to treat as consulting fees what would basically kickbacks. So was there, in fact, evidence at trial that the daughter did work? There was no – there was evidence at trial that after the defendants learned that they were being investigated, that Defendant Sabatini began creating what were called exception reports. And those exception reports, the evidence showed at trial, did not – they consisted of – I'm not asking for your version of the evidence. I'm asking you what a question you don't really want. But can you characterize in as favorable a way as possible to the other side? The evidence that she was performing work. I understand what your view of the evidence is. But what was her view of the evidence? What was that evidence put on? The evidence was that she submitted these exception reports beginning in 1998, which were submitted 60 or 90 days after the relevant period, which purportedly were supposed to be helping – It looks phony to me, but I'm wondering, how do I say, as I have to say under the condition that the error of the Chapman test is restated in Nieder, that it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Let me tell you what I'm worried about. These people look like crooks to me, and it looks pretty plain to me. I don't really – I don't really think there's much to their case. But I worry because the jury was not told that it has to point to something and say, that was a lie told to the union in order to get the union's money or the money that was passed through the union. And I have to be sure that didn't matter. And what I'm thinking is, it's all kind of complicated. There are legitimate consulting contracts. What's more, late reports don't mean they don't matter. People do chargebacks all the time in business where the bill is sent, the bill is paid, and months later somebody sends a letter saying there was a mistake in the bill, there was an overcharge, and both sides accept that, and there's a reimbursement or a credit. Gee, we do it on our visa bills. No big deal. Common. So the lateness of the consulting reports doesn't show they're not consulting reports. What I worry about is that in a fraud case like this, all the jury needed to be satisfied with was that these are really sleazy people and it's a dirty union and a dirty guy running the union and funneling money to his daughter, and they don't have to get their teeth into something specific. So show me exactly why it appears beyond a reasonable doubt that the failure to instruct on deceit or concealment did not contribute to the verdict. The best examples, Your Honor, are once for the dental plan and once for the medical plan, the defendants twice designating Four Winds RSK as a consultant for accrued fees covering earlier periods when, in fact, the company didn't even exist during that period in time. To us, that is holding out that company as a bona fide consultant for a period in which it couldn't have performed any work. We also have after investigation of PGMA begins, Defendant Sabatini forming a new consulting company called Auli'i, Inc., that company taking over where Four Winds had left off as far as HDS goes, using not her own first name but her middle name, which the testimony showed she didn't go by. And we have a restructuring of the entire arrangement to add in extra layers. All of this we argue clearly, and I would urge the Court to take a look at the government's closing argument. There's a very succinct summary of the evidence, and it's in Volume 19, pages roughly 38 through 62, where the government's ---- In the excerpts? Parts of it is, Your Honor, in the supplemental excerpts, our supplemental excerpts. You also have a restructuring of the entire arrangement so that the money is no longer flowing directly to the consulting company, but it's going through intermediaries. That, we argued, was designed to cover up and distance the defendants from what was really going on. After you've got a State subpoena served on Four Winds and a Federal subpoena served on HDS is when Defendant Sabatini began preparing these exception reports and showing up at the union offices. Before that, there's no evidence whatsoever of any work done. And finally, you've got the testimony of Jane Endo that Defendant Rodrigues, again, after learning that HDS had been served with a subpoena, shredding tax forms. This is during the period of the HDS scheme is ongoing. He shreds tax forms that relate to payments that had been made, both to Al Laughrin and to HDS. And all of that, Your Honor, again, another example would be Defendant Rodrigues resigning from one of the intermediaries that was added into this consulting arrangement, resigning from the board, which he had been a longtime board member. We argued that his resignation was intended to cover up what was really going on and the connection between him and the consulting fees. So all of that, we would argue, constitutes harm – I mean, evidence sufficient to carry our burden under the arms of the State. Kennedy, this was an important case for the government, right? Yes, sir. So why can't you do it right the first time? Well, I don't believe it was, Your Honor. Again, we followed the rules. Well, why do we even have to be here arguing about all this stuff today? I mean, who went through this indictment? Who figured it out? Who drafted it? The U.S. Attorney's Office, I believe, in conjunction with the organized crime section of the Department. All right. So they didn't do it right, did they? The indictment, I believe, Your Honor, is fine. I mean, insofar as the jury instruction issue, rightly or wrongly, the Court and the parties basically asked for the pattern instruction. Now, in hindsight, would it have been better to add more in? Yes. But both parties effectively asked for the pattern instruction slightly modified. The defendants got one of the modifications they requested, but not the other. But that's where we're left with. It's people – the government was careful. The district court was careful. And the instructions, again, were tailored after the Ninth Circuit pattern instruction. Bad pattern instruction. Unfortunately, Your Honor, it's not as clear as it should be. But again, even if there's error in it – There's a disclaimer in those instructions, right? Yes, Your Honor. You can't just copy them. You have to research the law. You have to think about it. Go ahead. Well, if we had it to do over again, we would add in these extra facts. And I don't believe there would be any problem in establishing these facts. But the fact of the matter is the error here was harmless. The centerpiece of the government's case was concealment, cover-up. And again, I would urge the Court to look at the government's closing argument. That was what we were arguing about. And by the way, I would note that on the embezzlement counts, the jury was instructed that it had defined fraudulent intent for Defendant Rod Riggs. And the embezzlement counts were based on the same underlying conduct as the counts 1 through 50, the fraud – the mail fraud counts. The jury, therefore, did make a finding that at least overlaps substantially with what it would have had to made. Can I ask you a question? Yes, sir. Who put these instructions together for the government? I don't know specifically who did, Your Honor. The trial team put them together. It happened very quickly. After the partial Rule 29 was granted, Your Honors, the defense decided not to put on a case. And the case, as a result, we ended up at the charge conference much more quickly than anyone anticipated. Would it have been better to stop and think more and be a little more careful? Yes. Didn't you have these ready before the trial? I would assume we did, Your Honor, but I don't know. I assume you come from D.C. and the case was tried by the U.S. Attorney's office in the locality. Yes, sir. I'm an appellate lawyer, so my job is a lot easier than the job that they have in trial. But the bottom line is, even if there was a ---- I'm just curious. Who put these together? I don't know specifically. I'd be happy to find out, Your Honor. Turn around, you'll find out. Find out. What were they put together? The U.S. Attorney's office in conjunction with the organized crime. I have some ---- I have said when did they put them together? They were prepared in exchange before trial. The district court gave a deadline, which the parties ---- And they were with the district court before trial? Yes. Yes, Your Honor. I have a question. There's something I'm having trouble following because it's such a huge, complex case. When the judge granted that partial judgment of acquittal, it really blew a hole in the government's case, and it really complicated the instructions and the arguments for what was left. Tell me exactly what the judge took out and what the judge left in and how what he left in still enables you to make a case, even if we disagree with you on whether misrepresentation or concealment is necessary. The judge's pretrial, the order partially granting the judgment of acquittal makes clear that the judge believed the money or property fraud theory to rest on allegations of specific misrepresentations or omissions of fact. The Court found that the government had failed to introduce sufficient evidence to prove any such specific misrepresentation or omission of fact. No, that's an incomplete recitational. You say it's correct, but only so far as it goes. Insufficient evidence of affirmative misrepresentation or omissions with respect to money going to him, that is to say, going to Mr. Rodriguez. Hence, the court's exception for the money that was paid to the stepfather of the girlfriend, which was to result in a forgiveness of a debt owed by him. He did not say anything beyond evidence as to monies coming to him. In other words, he says nothing about monies going to the daughter. Well, what is abundantly clear is that the court did not remove the fact of falsehood or deception from the case altogether, and we know that from the order itself, which talks about some of the same examples I've already discussed with the court, and the redacted version of the indictment, which appears in the excerpts of record, specifically pages 71 through roughly 76 or so of the excerpts of record, talks about, and these allegations, again, were left in this indictment and the subject of evidence and argument at the conclusion of trial, that redacted indictment includes very specific allegations of cover-up and concealment. And so we know from that, circumstantially, that the court clearly didn't intend to remove the fact of falsehood from the case altogether. I think the court really thought that the money and property theory, at least in part, required specific proof of specific misrepresentations or omissions. Roberts. With respect to money going to Rodriguez. Yes. And he found no evidence as to that. I'm sorry, Judge Kleinfeld. I never understood why the government lost on that, because it seems like you had specific misrepresentation. We don't understand either, Your Honor. Consulting fees, not consulting fees. We agree that it confuses us, and it did, it did. I thought the heart of the case was calling something consulting fees when it wasn't. Right. Is that the heart of the case? I think that is the heart of the case. And I think, again, if you look at the government's closing argument and the summation of the evidence contained therein, that was the heart of the case. But it looks to me like I guess what I don't understand is something that's not appealed so I don't have to understand it. It's not before me to decide whether the judge's Rule 29 decision was right. Is that right? I think that's right. I mean, we're not we obviously we can't appeal a judgment. Nothing you can do about it. Right. I mean, we're stuck with it. But, again, we think it's abundantly clear from the record that the Court did not it narrowed our case, but the Court did not strike a fatal blow to our fraud case. The Court left in enough for us to proceed to the jury, which we did. You know, I'll just make this comment. Yes, sir. I spent a few years of my life as a trial judge, and a dozen on the district court, and it was rare, and I underline that, that I ever got a decent set of instructions from the government. Because my experience has been, you know, they're sort of put together quickly. Sometimes they'll tell the secretary, go ahead and put them together, you know. And then we get them. The Court gets them. And I used to go through them. And rarely ever was there a decent set that was cohesive, that was clear. Counsel, I want you to know, I don't really blame anyone for it. If I were, if I quit this job and went back into law practice, what I would do different, because of what I know as a judge, is I'd write the instructions when I first got the case, send a copy to my client. This is what's going to be at issue. But I have talked to other judges who've been trial judges, and they all say the same thing. Yep, that's what we do. Write the instructions when we first got the case. Civil case, as soon as the client, or the adjuster, or whoever comes in with it. Criminal case, as soon as the defendant comes in. But none of us knew that when we were in practice. Gosh, I think we all did them at the last minute. I did it when I was in practice. Did you? Sure. I did them at the last minute. I know. I never practiced law a day in my life. But you did it at the last minute because you're up in Fairbanks, and the days are long, and you've got more time. More last minutes, yeah, that's true. Less minutes, yeah. Unless the Court has additional questions on this or any of the other issues, I'll. Oh, we're drawing with you because you're over your time anyway. Okay. I did, would like to point out, though, because our brief was filed before Booker, this is not clear in our brief. If we agree that a limited ammaline remand would be appropriate in this case, I'm not sure. You know, you also had an indictment here with how many counts were there, Doug? There were 102 counts total. 102 counts. Why did you need so many counts? Why can't you just pick a few and go with those? Well, I agree that it's somewhat confusing, but it really was just a separate. That adds to it, because nobody has the guts to make a decision. So we throw it all in. It's not necessary. Well, you know. Thank you, Your Honor. And that creates confusion. All right. I've got some tasks to fulfill here. For Judge Fletcher, the requested instruction is at page 127 and 128. Of what? Of the ER. The government misrepresented it when it said that the defense asked for instruction. Hang on a second. Let me get there. Let me get there. 127, 128 of Volume I of the ER? Right. Of our joint ER. The defense never asked for an instruction that the government had to prove a specific false statement. It asked for the correct instruction that it had to prove a material false statement or omission. Then the objections to the refusal to give that instruction by the defense are at page 239 and 240. And the defense counsel very explicitly says neither requires a material false statement. I'm slow. I'm getting there. I'm on page 239. Okay. 239 and 240. Okay. And my point is simply that the exit. Direct my attention to the text on 239 and 240. Starting at line 19. Okay. And over to 240, the defense says that the instruction as written is deficient because it does not require a finding of either actual or potential pecuniary loss or any material omission or misstatement, and specifically relies upon neither. Okay. I got it. Judge Kleinfeld, I wanted to emphasize that at page 7 of the joint ER, you have the original indictment which says that there was a scheme or artifice to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and omissions. If you look at page 67, you'll see that all of those words are struck from the indictment as it existed at the time when the case went to the jury. So when Mr. --" When the defendant stood before the jury to decide their guilt and innocence, they were not charged with making material false and fraudulent pretenses, representations, promises, and omissions. Those words were struck. They're no longer part of the remaining charge. There did remain in there a number of allegations of a failure to disclose. But what I would emphasize is that in order to find harmless error, this Court couldn't say, oh, there's overwhelming evidence of a false or material misrepresentation or omission. It would have to find overwhelming evidence limited to the allegations that remained in the indictment after it was redacted, which were about a failure to disclose. And I would submit that there is a great deal of evidence in the Court that apparently in the record that apparently convinced the trial judge that there wasn't a duty to disclose. The one --" And again, what were the last three words? That there was a lot of evidence and testimony saying that Mr. Rodriguez did not have a duty to disclose this consulting arrangement to the board. Is it the practice in the district court in Hawaii to send a copy of the indictment into the jury? What occurred in this case, Your Honor, was that it eventually did go in. The redacted indictment did go in. And, of course, what the jury was never told was that they had to limit their consideration of each count to the allegations within that count. For instance, in the health fraud count, 56, and this is, I think, relevant to one of Judge Kleinfeld's questions, there was never an allegation in 56 that the consultant fees were not earned. The only allegation of fraud contained in 56 was that there was a failure to disclose the consultantship arrangement. So 56 can't be affirmed on the grounds that there was evidence that the fees weren't paid or earned, or earned, rather, because that was never part of the charge. The government was apparently under the impression that the jury could go willy-nilly from one count to another and consider allegations made in one count in terms of another when the rule that this Court has stated again and again is that each count must be considered as an indictment in itself and limited to the allegations there, unless, of course, there's a specific incorporation. And the final point that I'll make, and then I'll sit down, is that on page ER-256, there's a colloquy between Defense Counsel Mr. Weinberg and the Court. And this addresses Judge Pregerson's question about whether these issues were adequately preserved. The Court said at page 256 of the ER, so that settles all of the instructions. And Mr. Weinberg said, I want the record to be clear that we've objected to this and the Court said, yes, Mr. Weinberg, abundantly clear. The Court, you made that point on several occasions, anything else. So I don't think that there's any – what very commonly happens in the trial context, in my experience, is that the settlement conference happens, the objections were all made, and everybody agrees that whatever objections made are fully preserved for appellate purposes. I think effectively that's what happened. I'm here now, that's why I asked the question. Right. Weinberg knew what he was doing. Well, he did, and I think at the end of the – what I'm saying is at the end of the settlement conference, it was very clear that all objections had been fully preserved. So what the judge was saying is, is there anything new or anything I've omitted rather than do you waive all your objections? Right, right. I think all the – You don't have to take exception in the Federal rule. That's right. I don't think that's required. So the question I would leave the Court with is, is it possible to say that there is overwhelming, uncontradicted evidence as to the specific allegations in the indictment that were – that remained after the redaction? The Court may feel, and the government certainly feels, that the Rule 29 shouldn't have been granted as to certain misrepresentations, that there was adequate evidence there. But we would all agree that having been acquitted, we'd have a double jeopardy problem if the jury could again consider or affirm or if this Court could affirm on the grounds of allegations that were there. What about why couldn't we send it back? Judge Fletcher raised in his questions the issue of how limited the language was in the Rule 29 decision by the judge. Why couldn't we remand for a new trial on misrepresentations and concealments that were not covered by the judge's Rule 29 decision? Oh, well, I believe that if this Court reverses and remands, as obviously we believe it should, that the government is free to retry any allegation that isn't demonstrably within the scope of the Rule 29 acquittal. So you're not claiming that any possible retrial for a deceit or concealment is precluded by double jeopardy? No. I think our position would be that retrial on the redacted indictment, with all that properly would involve, is appropriate. But obviously nothing could be resurrected that had been struck from the indictment, because I think that the fairest indication and the binding implication of the Court's Rule 29 ruling is what it strikes from the indictment. It may, you know, say other things in dicta, but whatever is out of the indictment is out of the indictment. And a retrial would be appropriate only on the redacted indictment, and there probably would be some fights below as to the scope of that. But the Court would make rulings that certain things, you know, remain in the case and other things don't. And, you know, I'm sure there'd be back and forth about that. But the Court certainly would be within its right to retry the case, or the government would, within the scope of the redacted indictment. Were the jury instructions sent into the jury room? I believe they were, yes. And just one final point. The government is correct that there was not a specific request that the Court give an intent to deceive instruction. But we are dealing with a Court that said no misrepresentation or omission is required in an honest services case. And so, one, I think that further objection is futile. But secondly, the absence of deceit, I would submit, is plain error in a case such as this. Thank you. Kennedy. You want to say something, Mr. Weinberg? I'll give you one minute, huh? You can get a lot in. Weinberg. You can get a lot in in one minute. I can. I wanted to add a couple of things to the issue of the consultant work. The government now claims that it was only after 1998 that this work was purportedly done. There was testimony from Ms. Sabatini's employer that starting in 1996, she told him that she needed to cut back her hours with him because she was working for the union. And there was also testimony from Melinda Smith, a UPW employee, who said she saw Ms. Sabatini frequently at UPW headquarters doing work and that they discussed benefit plan issues. Yeah. You said that to us earlier. All right. And the only other thing is that, you know, I believe one of the leitmotifs that went throughout the entire proceedings from January of 2002 through the verdict was the question of Count 102. This circuit is clear, and 15 judges of this circuit, including all members of this panel, have participated in decisions which have said that the safe harbor provisions of 29 CFR are mandatory, are the correct test, and the Court absolutely refused to apply that under the correct test. There's no question that this was not subject to ERISA because it was an exempt governmental plan. Thank you. Thank you. The matter will stand submitted, and we appreciate the argument. It was very thorough and helpful. Thank you. All rise. This court for this session is adjourned. Thank you.
judges: Pregerson, Kleinfeld, Hawkins